UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Joseph Romanick,<br><br>        Plaintiff,<br><br>    -Against-<br><br>County of Westchester, Village of Pleasantville, New York, Town of Mt. Pleasant, New York, Commissioner-Sheriff George N. Longworth, Village of Pleasantville Former Police Chief Anthony Chiarlitti, Town of Mount Pleasant Police Chief Louis Alagno, Police Officer Aaron Hess, Police Officer Ronald Beckley, Police Officer Ronald Gagnon, Detective Marco A. Mendoza, Detective Matthew F. Brown, Detective Martin Greenberg, Police Officer George W. Winsman, and John Does #1-30,<br><br>        Defendants. | 11 CV 7267 (KMK)<br><br>AMENDED COMPLAINT |

Plaintiff, Joseph Romanick, by his attorney Bonita E. Zelman, as and for his

Amended Complaint alleges upon information and belief as follows:

**INTRODUCTION**

1.  On October 17, 2010, plaintiff, Joseph Romanick, was a 21 year old

college student attending Pace University where he played as a quarterback on their

college football team.  He and one of his best friend's, teammate Danroy (DJ) Henry,

Jr., and their team had played Stonehill College football team on October 16, 2010 for

the homecoming game.  After the game, plaintiff and his friends went to celebrate

further homecoming festivities at Finnegan's Grill, a local restaurant.  Of the

approximate one hundred students celebrating inside Finnegan's Grill, a dozen or less

of these students were African-American and Hispanic.  That night it was about

1:00 AM when DJ, DJ's friend, Brandon Cox, from the Stonehill team, and Desmond

Hinds were waiting in a fire lane outside Finnegan's Grill for two other students to give

them a ride home.  They had all been celebrating homecoming inside with their team members and other college students.  When DJ was told by defendant police officer Ronald Gagnon to move their car, he moved slowly out of the fire lane.  Brandon Cox was in the front right passenger seat.  Plaintiff's close friend and teammate, Desmond Hinds was sitting in the rear passenger seat.

2.     Defendant Pleasantville Police Officer Aaron Hess was on duty in the parking lot outside the Pace University homecoming celebration held at Finnegan's Restaurant.  As DJ Henry drove slowly down the fire lane, defendant Aaron Hess jumped in front of the vehicle with his hands in a two hand hold combat stance and he began firing into the car full of African-American students.  Defendant Hess continued shooting into the car from the hood of the car.

3.     Defendant Hess' criminal and lawless conduct triggered contagious and violent police brutality inflicted upon other innocent, non-violent students leaving the homecoming celebration at Finnegan's Restaurant, only to see their friend DJ face down and handcuffed, bleeding to death in the street.  Defendant Hess' deliberate decision to shoot into a car containing innocent college students, created a heightened atmosphere, which precipitated and ignited subsequent acts of brutality by his fellow police officers.  By defendant Hess' shooting without justification was a substantial factor in bringing about the misconduct of co-defendant police officers who engaged in acts of brutality and violence against the plaintiff.  The acts of co-defendant police officers were a natural and foreseeable consequence of the circumstances created by defendant Hess in opening fire on innocent students.  In light of common contemporary experience it was reasonably foreseeable that a police melee or a riot could erupt as a result of defendant Hess' unlawful shooting.  The general risk reasonably to be

anticipated from the dynamics of a police shooting by Hess precipitated and initiated the acts of co-defendant police in exerting and resorting to brutality against the assemblage of students leaving the restaurant. Defendant Hess' shooting caused a web of interconnected acts of brutality operating together to produce manifold effects in terms of various acts of brutality which included tasering, beating, falsely arresting and maliciously prosecuting innocent students. Defendant Hess set in motion the series of acts of brutality by his co-defendants, which he knew or reasonably should have known would result from his unjustifiable aggression. Defendant Hess was responsible for the panic and chaos that followed his shooting innocent students, and that triggered a contagious, foreseeable further incidents of unlawful use and threatened use of deadly physical force by police officers at the scene.

4.      The car came to rest at the side of the road with DJ Henry slumped in the seat in a pool of blood, shot twice in the chest and once in the arm. Brandon Cox was shot in the left arm and two bullets had barely missed striking Desmond Hinds, and were embedded in the car seat on both sides of him. Although DJ Henry was still alive, the police did not immediately attend to his bullet wounds and instead handcuffed him behind his back and left him bleeding to death on the pavement. Brandon Cox was also handcuffed and deprived of immediate medical attention. Desmond Hinds was forcibly dragged from the rear passenger seat by a white police officer and slammed violently into the pavement causing him to sustain severe head trauma where he was handcuffed behind his back. Desmond turned his head to the officer and said: "Officer we did absolutely nothing wrong." The officer then pressed his gun to the back of Desmond's head, told him to "shut the f- - k up" and then slammed his head back into the pavement.

5.     The shooting and brutality was lawless and without basis, since the African-American young men were following police instructions to leave a fire lane, when defendant Hess jumped in front of a moving car and then he and defendant Ronald Beckley intentionally and deliberately started shooting into a car full of students. DJ and his friends in the car were all unarmed, were not fleeing felons and presented no threat whatsoever to anyone to warrant the deadly force inflicted upon them.

6.     Plaintiff, Joseph Romanick, came out of Finnegan's Restaurant and learned that his friend DJ Henry had been shot by police bullets and was lying in the street and bleeding.  He saw his friend, Desmond, lying in the street handcuffed, in a lot of pain and crying.   Plaintiff ran to Desmond and asked "What happened?" and Desmond replied "I think they shot DJ".  He saw a white police officer running out and yelling "get the fuck back."  He was scared for his life seeing his great, innocent, good hearted friends DJ and Des laying out on the concrete.  He saw DJ laying on the ground face down in handcuffs.  He was in shock and devastated.  He was on the sidewalk when he saw a police officer with his gun drawn waving it at students and yelling "get the f- -k back."  He was thinking that he didn't want to be the next person shot. There were white police officers running around waving their weapons at students.

7.     Plaintiff was on the sidewalk when an officer ordered him to "stay put."  He tried to tell the officer it was his friend that was shot and he wanted to help him.  The officer wouldn't listen. Plaintiff by his actions was acting to vindicate the Equal Protection rights of his African American friend D. J. Henry to be provided with immediate emergency medical care.  Furthermore, plaintiff was acting to vindicate the rights of his other minority friends who were being brutalized by defendants merely because they were attempting to provide medical care to the injured D. J. Henry.  The

4

defendant police officers were refusing to provide any emergency medical care to the African American D. J. Henry all the while tending to the non-life threatening injuries of the white defendant Hess.  Plaintiff by his actions was also attempting to vindicate the §1981 Equal Protection rights of D.J. Henry and the African American and Hispanic students on the scene.  The white plaintiff by his actions opposed defendants' illegal and discriminatory treatment of African American D.J. Henry with respect to the provision of emergency medical services.

8.    Another student tried to keep plaintiff back, put him in a bear hug and pushed him against the window of an abandoned bagel store.  His back hit the window and the window collapsed on top of his head.  A group of 4-6 police officers came charging at him, yelling to "get the f- - k down".  Plaintiff got down on his knees and asked the officers to "please take it easy on me, I have a shoulder injury."  His right shoulder was in a sling from a prior football injury.  An officer responded: "it's too late, you f- -ked up already."  He shut his eyes in fear.  It was then that the group of officers tackled him violently into the pavement onto his already injured right shoulder.  They laid his whole body out on the pavement and drove his right shoulder into the concrete. An officer grabbed his left arm behind his back and then pulled his injured right arm back.  The officer said "oh sh-t he's in a sling" and then cuffed his left arm behind him to his right belt loop.  He was lifted by officers up from the ground and taken to a police cruiser.

9.    Plaintiff, a white student, was the subject of police brutality and other Constitutional violations because of his efforts to vindicate the §1981 rights of the racially minority students on the scene including the African American D.J. Henry and the other plaintiffs to this action.  Plaintiff was vindicating the rights of the minority

students to receive the full and equal benefit of all laws and proceedings for the security of persons.

10.    Plaintiff was left in the back of the police car for a long time and then brought to the Mount Pleasant jail in custody.  He was first placed in a holding cell cuffed to a chair and then an officer came and said: "what are you doing in here. You're a criminal" and moved him into a cell with bars. Plaintiff kept asking every police officer he saw about the condition of his friend DJ, but they said they had no idea although they all knew he had died.   Plaintiff was fingerprinted and a mug shot taken. He remained in custody until approximately 2:00 PM October 17, 2010 when he was issued a Mount Pleasant Police Department Appearance Ticket charging him with Criminal Mischief in the Third degree.

11.    On October 21, 2010, plaintiff was arraigned on this false felony charge on the sworn felony complaint of defendant, Detective Marco A. Mendoza of the Mount Pleasant Police Department.  The felony complaint falsely charged that plaintiff did "intentionally damage window of the former bagel works bagel store by striking the window pane, with his left elbow, causing the glass to shatter."  The supporting deposition of one Stephen Vanostrand taken by defendant, Detective Matthew F. Brown, falsely stated that while plaintiff's back was to the window of the store, he "pulled his hand back, causing his elbow to hit the window.  The window shattered into pieces."

12.    On December 16, 2010, plaintiff was re-arraigned on a superceding misdemeanor information sworn to by defendant, Detective Martin Green as complainant, of the Town of Mount Pleasant Police Department.  This information falsely charged plaintiff with 2 counts of Criminal Mischief in the Fourth Degree, Class A

6

misdemeanors, now charging that he both intentionally and recklessly broke the store window. This misdemeanor information was based on the complainant defendant Green's direct knowledge and upon information in the false supporting deposition of defendant, Police Officer George Winsman of the Westchester County Department of Public Safety. In his sworn supporting deposition, defendant Winsman swears that he observed the plaintiff "pull his left arm back across the front of his body and then drive his fist and forearm into the middle portion of the same window. This strike caused the window pane to break and large sections of the window came crashing down."

13.    The aforesaid statements of defendants Mendoza and Winsman were sworn false statements made pursuant to Penal Law §210.45 making it a crime punishable as a class A misdemeanor to knowingly make such false statements.

14.    Plaintiff was unarmed, had committed no crime or offense when he was brutally and viciously attacked by defendants, their officers, agents, servants and employees.

15.    Plaintiff was falsely arrested and detained in custody without a scintilla of evidence of any wrongdoing, probable cause, justification or excuse.

16.    Defendant Gagnon and John Does #1-30 witnessed these criminal events and actions of the defendants-assaulting officers, but failed or refused to intervene, though they had the obligation and opportunity to do so.

17.    Plaintiff, Joseph Romanick, also suffered great trauma from witnessing the murder of his good friend, DJ Henry, who was killed by defendant Hess, as well as the false arrest against Desmond Hinds and the brutality inflicted on himself personally.

18.    This is a civil rights action seeking damages for the violations by defendants of plaintiff's rights, privileges, and immunities under the United States

7

Constitution and the Civil Rights Act of 1871, 42 U.S. C. § 1983, and New York State common law.

19.     This is one of nine related lawsuits brought on behalf of college students who attempted to aid their friend DJ Henry after he was shot by defendant Hess and who were brutalized, some tasered and beaten, falsely arrested, maliciously prosecuted and/or threatened with the use of deadly physical force on October 17, 2010 by various members of different responding police forces including the police departments of defendant-municipalities.

### PARTIES

20.     Plaintiff Joseph Romanick is a 22 year old college student who resides in Slidell, Louisiana.

21.     Plaintiff Joseph Romanick is a white male who was brutalized and injured by reason of defendants' misconduct because he tried to vindicate the rights of his minority fellow football players and college students.

22.     Defendant, County of Westchester is a county in New York State, which, at all relevant times, employed Westchester County Department of Public Safety police officers, John Does # 1-10 (currently unidentified) who were at the scene of the shooting and who committed and/or participated in the wrongful acts alleged herein and/or acted in concert with the named defendants and/or did nothing to prevent defendants' illegal acts.  It may sue and be sued and, at all relevant times, employed defendant Winsman as a police officer.

23.     Defendant Village of Pleasantville, New York, is a municipality within the County of Westchester in New York State, which at all relevant times employed Village of Pleasantville police officers, John Does # 11-20 (currently unidentified) who were at

the scene of the shooting and who committed and/or participated in the wrongful acts alleged herein and/or acted in concert with the named defendants and/or did nothing to prevent defendants' illegal acts.  It may sue and be sued and, at all relevant times, employed defendant Hess as a police officer.

24.     Defendant Town of Mount Pleasant, New York, is a municipality within the County of Westchester, State of New York which, at all relevant times, employed Town of Mount Pleasant police officers, John Does #21-30 (currently unidentified) who were at the scene of the shooting and who committed and/or participated in the wrongful acts alleged herein and/or acted in concert with the named defendants and/or did nothing to prevent defendants' illegal acts.  It may sue and be sued and, at all relevant times, employed defendants Beckley and Gagnon as police officers, and defendants Mendoza, Brown and Green as police detectives.

25.     Defendant, Commissioner-Sheriff George N. Longworth, is and was at all relevant times, employed as the police commissioner of the defendant, County of Westchester and the head of the Westchester County Department of Public Safety, and as such said defendant was acting as their agent, servant, and/or employee, and within the scope of his employment as such.

26.     Defendant Anthony Chiarlitti, was at all relevant times, the Village of Pleasantville Police Chief, acting in said capacity as the Village of Pleasantville's agent, servant, and/or employee, and within the scope of his employment as such.

27.     Defendant Louis Alagno, is and was at all relevant times, the Mount Pleasant Police Chief, acting in said capacity as the Town of Mount Pleasant's agent, servant, and/or employee, and within the scope of his employment as such.

28.     Defendant Aaron Hess is a white police officer who, at all relevant times,

was employed by the Village of Pleasantville, New York.  At all times relevant hereto, defendant Hess was acting in his capacity as the Village of Pleasantville's agent, servant, and employee, and within the scope of his employment as such.

29.    Defendant Ronald Beckley is a white police officer who, at all relevant times, was employed as a police officer for the Town of Mount Pleasant, New York. At all times relevant hereto, defendant Beckley was acting in his capacity as the Town of Mount Pleasant's agent, servant, and employee, and within the scope of his employment as such.

30.    Defendant Ronald Gagnon is a white police officer, who, at all relevant times, was employed as a police officer  for the Town of Mount Pleasant, New York.   At all times relevant hereto, defendant Gagnon was acting in his capacity as the Town of Mount Pleasant's agent, servant, and employee, and within the scope of his employment as such.

31.    Defendant Marco A. Mendoza is a white police detective, who, at all relevant times, was employed as a detective  for the Town of Mount Pleasant, New York.   At all times relevant hereto, defendant Mendoza was acting in his capacity as the Town of Mount Pleasant's agent, servant, and employee, and within the scope of his employment as such.

32.    Defendant Matthew F. Brown is a white police detective, who, at all relevant times, was employed as a detective  for the Town of Mount Pleasant, New York.   At all times relevant hereto, defendant Brown was acting in his capacity as the Town of Mount Pleasant's agent, servant, and employee, and within the scope of his employment as such.

33.    Defendant Martin Greenberg is a white police detective, who, at all

relevant times, was employed as a detective for the Town of Mount Pleasant, New York. At all times relevant hereto, defendant Greenberg was acting in his capacity as the Town of Mount Pleasant's agent, servant, and employee, and within the scope of his employment as such.

34.    Defendant George W. Winsman is a white police officer of the Westchester County Department of Public Safety employed by the County of Westchester. At all times relevant hereto, defendant Winsman was acting in his capacity as a police officer in the Westchester County Department of Public Safety of the County of Westchester, as their agent, servant, and employee, and within the scope of his employment as such.

35.    Defendants Hess, Beckley, Gagnon, Mendoza, Brown, Greenberg, Winsman, along with defendants John Does # 1-30 (all of whom were Town of Mount Pleasant police officers, Village of Pleasantville police officers, and Westchester Department of Public Safety police officers) are collectively referred to herein as the "defendant officers".

### JURISDICTION AND VENUE

36.    This action arises under the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § § 1983 and 1988 and New York State common law.

37.    The jurisdiction of this Court is predicated upon 28 U.S.C. § § 1331, 1343(a)(3) and (4), 1367(a), and the doctrine of pendent jurisdiction. This Court also has diversity jurisdiction pursuant to 28 U.S. C. § 1332 because Mr. Romanick resides in Louisiana and, upon information and belief, all defendants reside in New York, and the amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive

of interest and costs.

38.    The acts complained of occurred in the Southern District of New York, and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

**JURY DEMAND**

39.    Plaintiff demands trial by jury in this action.

**FACTUAL ALLEGATIONS**

40.    Plaintiff, Joseph Romanick, came out of Finnegan's Restaurant and learned that his friend DJ Henry had been shot by police bullets and was lying in the street and bleeding.  He saw his friend, Desmond, lying in the street handcuffed, in a lot of pain and crying.   Plaintiff asked Desmond "What happened?" and Desmond replied "I think they shot DJ".  He saw a white police officer running out and yelling "get the fuck back."  He was scared for his life seeing his great, innocent, good hearted friends DJ and Des laying out on the concrete.  He saw DJ laying on the ground face down in handcuffs.  He was in shock and devastated.  He was on the sidewalk when he saw a police officer with his gun drawn waving it at students and yelling "get the f- -k back." He was thinking that he didn't want to be the next person shot. There were white police officers running around waving their weapons at students.

41.    Defendant Hess, immediately after the shooting can be observed in a seated position communicating with other uniformed police officers not exhibiting observable signs of excruciating pain and communication with fellow uniformed police officers on the scene.

42.    Defendant Hess failed to intercede, verbally or otherwise, in the acts of discrimination by the other defendant-police officers on the scene in violation of the Constitutional and Equal Protection rights of D.J. Henry and the plaintiffs.

43.    Plaintiff was on the sidewalk when an officer ordered him to "stay put."  He tried to tell the officer it was his friend that was shot and he wanted to help him.  The officer wouldn't listen.  Another student tried to keep him back, put him in a bear hug and pushed him against the window of an abandoned bagel store.  His back hit the window and the window collapsed on top of his head.  A group of 4-6 police officers came charging at him, yelling to "get the f- - k down".  Plaintiff got down on his knees and asked the officers to "please take it easy on me, I have a shoulder injury."  His right shoulder was in a sling from a prior football injury.  An officer responded: "it's too late, you f- -ked up already."  He shut his eyes in fear.  It was then that the group of officers tackled him into the pavement onto his already injured right shoulder.  They laid his whole body out on the pavement and drove his right shoulder into the concrete.  An officer grabbed his left arm behind his back and then pulled his injured right arm back. The officer said "oh sh-t he's in a sling" and then cuffed his left arm behind him to his right belt loop.  He was lifted by officers up to the ground and taken to a police cruiser.

44.    Plaintiff was left in the back of the police car for a long time and then brought to the Mount Pleasant jail in custody.  He was first placed in a holding cell cuffed to a chair and then an officer came and said: "what are you doing in here. You're a criminal" and moved him into a cell with bars. Plaintiff kept asking every police officer he saw about the condition of his friend DJ, but they said they had no idea although they all knew he had died.   Plaintiff was fingerprinted and a mug shot taken. He remained in custody until approximately 2:00 PM October 17, 2010 when he was issued a Mount Pleasant Police Department Appearance Ticket charging him with Criminal Mischief in the Third degree.

45.    On October 21, 2010, plaintiff was arraigned on this false felony charge on the sworn felony complaint of defendant, Detective Marco A. Mendoza of the Mount Pleasant Police Department.  The felony complaint falsely charged that plaintiff did "intentionally damage window of the former bagel works bagel store by striking the window pane, with his left elbow, causing the glass to shatter."  The supporting deposition of one Stephen Vanostrand taken by defendant, Detective Matthew F. Brown, falsely stated that while plaintiff's back was to the window of the store, he "pulled his hand back, causing his elbow to hit the window.  The window shattered into pieces."

46.    On December 16, 2010, plaintiff was re-arraigned on a superceding misdemeanor information sworn to by defendant, Detective Martin Green as complainant, of the Town of Mount Pleasant Police Department.  This information falsely charged plaintiff with 2 counts of Criminal Mischief in the Fourth Degree, Class A misdemeanors, now charging  that he both intentionally and recklessly broke the store window.  This misdemeanor information was based on the complainant defendant Green's direct knowledge and upon information in the false supporting deposition of defendant, Police Officer George Winsman of the Westchester County Department of Public Safety.  In his sworn supporting deposition, defendant Winsman swears that he observed the plaintiff "pull his left arm back across the front of his body and then drive his fist and forearm into the middle portion of the same window.  This strike caused the window pane to break and large sections of the window came crashing down."

47.    The aforesaid statements of defendants Mendoza and Winsman were sworn false statements made pursuant to Penal Law §210.45 making it a crime punishable as a class A misdemeanor to knowingly make such false statements.

14

48.    Plaintiff was unarmed, had committed no crime or offense when he was brutally and viciously attacked by defendants, their officers, agents, servants and employees.

49.    Plaintiff was falsely arrested and detained in custody without a scintilla of evidence of any wrongdoing, probable cause, justification or excuse.

50.    Plaintiff, Joseph Romanick, suffered great trauma from witnessing the murder of his good friend, DJ Henry, who was killed by defendant Hess, as well as the false arrest against Desmond Hinds, the brutality inflicted on himself personally and the defendant officers threatening his friends with deadly physical force.

51.    Prior to this incident, Westchester County had already been placed on notice that its police officers had exhibited a pattern and practice of excessive and unlawful use of force and deadly physical force on racial minorities; and that it had to train its officers on justification and the lawful use of force, as well as on diversity, racial bias and racial profiling.

52.    The Westchester County Police Academy trains all police officer recruits for each of the forty-three (43) separate municipal police departments within Westchester County.

53.    However, in-service training typically occurs within the respective police departments and is delivered by their own personnel.

54.    As a result there are forty-three (43) different in-service training programs operating within the County of Westchester.

55.    Therefore, within the County of Westchester, there exists no uniform "use of force training" program, lessons, or materials used to instruct police officers on the proper use of physical and deadly physical force (as defined in the Article 35 of the New

15

York State Penal Law).

56.     On or about December 3, 2005, a Yonkers resident and high school basketball star, Dequan Massey, was arrested when he was helping his mother, Dara Massey, put out old unwanted furniture to be picked up by sanitation.

57.     Dequan Massey was charged with "attempted illegal dumping".   When his mother, Dara Massey, plead with the police to let her son go, an officer punched her in her face and she was beaten by five police officers who falsely arrested her.  Upon information and belief, Dara Massey was found "not guilty".

58.     On or about March 3, 2007, Irma Marquez, a 44-year-old Latina and a resident of Westchester County, suffered severe injuries in a Yonkers bar at the hands of the Yonkers Police Department.

59.     Ms. Marquez alleged in her federal civil complaint that at approximately 2:00  A.M., Yonkers police were called to LaFonda Bar in Yonkers to respond to a report that a woman, Ms. Marquez's niece, was unconscious and in need of medical assistance.  In her Federal complaint filed against the officers she alleged that when she leaned over to observe the paramedics assisting her niece, an officer pinned her arms to her side, lifted her off the floor and "drove her body, face first, into the ceramic tile floor of the restaurant. "

60.     Officer Christopher Ridley, a 23-year-old African-American off-duty police officer for the City of Mount Vernon, was shot and killed by white police officers on January 25, 2008.

61.     Stanley Ridley (the father of Officer Ridley) filed a Federal civil complaint on April 10, 2009 against Westchester County District Attorney Janet DiFiore, four (4) on duty police officers, Commissioner Thomas Belfiore, Medical Examiner Millard

Hyland, County Executive Andrew Spano, and the County of Westchester.

62.    Felita Rucker-Bouche (the mother of Officer Ridley) filed a Federal civil complaint on April 20, 2009 against Westchester County, Westchester County Department of Public Safety, the four (4) police officers, the City of Mount Vernon, the City of White Plains and Volunteers of America- Greater New York, Inc.

63.    Stanley Ridley alleged that Officer Olivieri shot his son, Officer Ridley, at point blank range above his left eye after Officer Ridley had fallen from the earlier shots.  The medical report indicated that powder burns were left on Officer Ridley's forehead indicating a close range kill type of shooting.

64.    Stanley Ridley described the killing of his son as " . . . a self-evidently racist murder of an African-American police officer by a Caucasian county police officer."  The Ridley complaint alleges racial animus: " .. . The murder of Officer Ridley by Oliveri, a Caucasian apparently motivated by racial animus, was not justifiable, but instead was a brutal execution."

65.    On February 3, 2010, Sergeant Kenneth Kissiedu, an African-American 16 year veteran of the New York City Police Department was assaulted by two white Yonkers police officers, arrested and charged with Obstruction of Governmental Administration.

66.    Sergeant Kissiedu, was a Yonkers resident, and was on his way to the Bronx when he stopped at a Chase ATM at 10:42 P.M.  Two white police officers came upon the scene and yelled to him, "Yo, yo, yo, yo."  Sergeant Kissiedu responded to the officers "Yo is not my name."  He was then assaulted on the spot and falsely arrested.

67.    On September 16, 2011, a jury found NYPD Sergeant Kissiedu "not guilty" of all charges brought against him by the Yonkers Police Department and the

Westchester County District Attorney's Office.

68.    The U.S. Department of Justice has an ongoing investigation into the use

of excessive force by Yonkers police officers according to The Journal News, June 1,

2009.

69.    Damon K. Jones, director of the Westchester Chapter of the National

Black Police Association stated: "I really believe the D.A.'s office needs to step up and

look into police misconduct, not just in Yonkers, but throughout Westchester County."

The Journal News, June 1, 2009.

70.    Damon K. Jones also said on March 14, 2010 "Police brutality and

misconduct are an ongoing occurrence in the poor Black and Latino communities in

Westchester County. The Westchester NBPA considers this brutality and misconduct

police CRIMINALITY."

71.    Following the shooting death on January 25, 2008, of police officer

Christopher Ridley, by a white county police officer, a Panel to Review Use of Force

Training (The "Panel") was commissioned by then Commissioner-Sheriff Thomas

Belfiore of the Westchester County Department of Public Safety to "objectively and

critically examine, assess and make necessary recommendations concerning "use of

force" training conducted at, and under the direction of, the Westchester County Police

Academy.

72.    On May 9, 2008, the Panel issued its "Final Report of the Panel" ("Final

Report of the Panel") on their review of the "use of force" training at the Westchester

County Police Academy.

73.    The purpose of the Panel was to undertake a comprehensive review of

"use of force" training of any type involving the deployment of any type of physical force

by police officers in order to enhance the overall level of public safety in Westchester County.

74.    The above referenced Final Report of the Panel was made public two years and five months prior to the shooting death of DJ Henry and the brutality inflicted on numerous other students present and attempting to aid and comfort their fallen friend and teammate.

75.    The scathing Final Report of the Panel revealed gross inadequacies in both recruit training in use of force as well as in-service training on use of force throughout all the various Westchester County police departments.

76.    Accordingly, the Final Report of the Panel placed the defendants, County of Westchester, Village of Pleasantville, New York, Town of Mount Pleasant, Commissioner-Sheriff George N. Longworth, Village of Pleasantville former Police Chief Anthony Chiarlitti, Town of Mount Pleasant Police Chief Police Louis Alagno, on notice that deficiencies in police training in use of force existed and needed to be addressed and corrected for the safety and welfare of the public.

77.    The Final Report of the Panel contained "Recommendations Regarding Guidelines, Policies and Available Resources in Use of Force Training".

78.    The Final Report of the Panel resulted in specific "Recommendations Regarding *Recruit Training* in Use of Force".

79.    The Final Report of the Panel resulted in specific "Recommendations Regarding *In-Service Training* in Use of Force".

80.    Upon information and belief, although the Panel recommended immediate implementation regarding many of these recommendations, defendants  County of Westchester, Village of Pleasantville, New York, Town of Mount Pleasant,

Commissioner-Sheriff George N. Longworth, Village of Pleasantville former Police Chief

Anthony Chiarlitti, Town of Mount Pleasant Police Chief Police Louis Alagno, have

failed to do so, thereby continuing to enforce, encourage and sanction a policy, practice

and/or custom of illegal and unconstitutional use of police force and false arrest,

particularly against racial minorities.

81.     The 2008 RAND Corporation report entitled "Evaluation of the New York

City Police Department Firearm Training and Firearm-Discharge Review Process"

discussed the well recognized phenomenon within the law enforcement communities in

New York State of "contagious shooting" and "mass reflexive response".  This refers to

a group phenomenon where a police officer is reacting to the sight and sound of

another police officer's shooting and then also begins to shoot and engage in other

illegal use-of-force.  It refers to the gunfire and brutality that spreads among officers in

this phenomenon.  This known phenomenon means that defendant Hess should have

reasonably foreseen the consequences of his own actions in illegally shooting his

firearm at the African Americans students and his wrongful actions as a proximate

cause of the resultant brutality by other police officers on the scene.

82.     The RAND report discussed how virtually all firearm-safety training

highlights sensitizing officers to reduce the use of inappropriate mass reflexive

responses.

83.     Defendant Hess was also on notice through many aspects of police officer

training that his deliberate decision to shoot into a car full of African American students

would be a catalyst for his fellow officers on the scene to engage in similar excessive

uses-of-force.

84.     Defendants County of Westchester, Village of Pleasantville, New York, Town of Mount Pleasant, Commissioner-Sheriff George N. Longworth, Village of Pleasantville former Police Chief Anthony Chiarlitti, Town of Mount Pleasant Police Chief Police Louis Alagno, acted with a callous, reckless and deliberate indifference to plaintiff's rights in that it failed to adequately discipline, sanction, train, retrain, investigate, supervise or otherwise direct police officers concerning the rights of citizens, in particular racial bias/profiling, diversity, and use of force, thereby causing, sanctioning and allowing the defendant officers in this case to wrongfully taser, arrest and maliciously prosecute plaintiff.

85.     The excessive use of brutal force on plaintiff, the battery, the threatened imminent use of deadly physical force by waving a loaded firearm at plaintiff, violently beating and attacking him, the false arrest, and the restraint, detention and prosecution lacked any lawful basis and probable cause, and were done maliciously, falsely, and in bad faith. The denial of immediate medical care also lacked lawful basis and was done maliciously, and in bad faith.  Defendants acted deliberately and in wanton and reckless disregard for the rights and safety of plaintiff.

86.     As a result of defendants' conduct described above, including the unlawful use of excessive force, the violent assault, the threats of imminent use of deadly physical force by waving a loaded gun at plaintiff, restraining, falsely arresting and denying immediate medical care to plaintiff, malicious prosecution, plaintiff suffered serious physical and emotional injuries, pain and suffering, shock, trauma, fear of impending death, loss of enjoyment of life, post traumatic stress disorder, emotional distress, mental anguish, humiliation and embarrassment, reputational injury, educational losses, medical costs, legal costs, and other losses.

87.    Within ninety days after the claims alleged in this Complaint arose, a written notice of claim was served upon defendants Mount Pleasant, Village of Pleasantville, New York, and the County of Westchester.  A second Notice of Claim was served on these defendants within 90 days of dismissal of the criminal charges on March 24, 2011.  At least thirty days have elapsed since the service of the notices of claim, and adjustment or payment of the claims has been neglected or refused.  This action has been commenced within one year and ninety days after the happening of the event upon which the claim is based.

### FIRST CAUSE OF ACTION
42 U.S.C. § 1983
(Against the defendant officers)

88.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

89.    By the above, and by arresting plaintiff without probable cause, using excessive force against him, assaulting him, unreasonably seizing him, denying him immediate medical care, maliciously prosecuting him, and/or failing to intervene to prevent this conduct, the defendant officers deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S. C. § 1983, including, but not limited to, rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

90.    Defendants acted under pretense and color of state law and in their individual and official capacities and/or within the scope of their respective employments with Mount Pleasant, Village of Pleasantville, New York,  and County of Westchester.   Said acts by the defendants were beyond the scope of their jurisdiction, without authority of law, and an abuse of their powers, and said defendant officers

acted willfully, knowingly, and with the specific intent to deprive plaintiff of his constitutional rights secured by 42 U.S.C. §1983, and by the Fourth and Fourteenth Amendments to the United States Constitution.

91.    As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

### SECOND CAUSE OF ACTION
Assault and Battery
(Against All Defendants)

92.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

93.    Defendants, their officers, agents, and/or servants, who threatened plaintiff with a gun and tackled him onto an already injured right shoulder, were acting within the scope of their employment, and intentionally, willfully, and maliciously assaulted and battered plaintiff.

94.    Defendants, their officers, agents, servants acted criminally in their vicious, violent, unprovoked and unjustifiable assault and battery inflicted on plaintiff.

95.    Defendants,  their officers, agents, and/or servants, acted in a hostile and offensive manner, with the intention of and did cause fear, harm and apprehension to plaintiff.

96.    Defendants, County of Westchester, Village of Pleasantville, New York, Town of Mount Pleasant, New York,  as the employers of the defendant officers, are responsible for their wrongdoing under the doctrine of respondent superior.

97.    As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

**THIRD CAUSE OF ACTION**
False Arrest and False Imprisonment
(Against All Defendants)

98.     Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

99.     By the actions described above, the defendants falsely arrested, falsely imprisoned and detained plaintiff without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so and/or witnessed and failed to intervene in his false arrest and detention despite the obligation and opportunity to do so. The acts and conduct of defendants were the direct and proximate cause of injury and damage to plaintiff and violated his common law rights guaranteed to him by the laws of the State of New York.

100.    Defendants, County of Westchester, Village of Pleasantville, New York, Town of Mount Pleasant, New York,  as the employers of the defendant officers are responsible for their wrongdoing under the doctrine of respondent superior.

101.    As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

**FOURTH CAUSE OF ACTION**
(Violation of 42 U.S.C. §1983 Against County of Westchester, Village of Pleasantville, New York,  Town of Mount Pleasant, New York, Commissioner-Sheriff George N. Longworth, Village of Pleasantville Former Police Chief Anthony Chiarlitti, Town of Mount Pleasant Police Chief Police Louis Alagno)

102.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

103.    Defendants, County of Westchester, Village of Pleasantville, New York,

Town of Mount Pleasant, New York, Commissioner-Sheriff George N. Longworth, Village of Pleasantville Former Police Chief Anthony Chiarlitti, Town of Mount Pleasant Police Chief Police Louis Alagno,  have violated the plaintiff's rights, privileges and immunities secured by the Civil Rights Act of 1871, 42 U.S.C. §1983, the Fourth and Fourteenth Amendments to the US Constitution, and Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000(d), et seq., ("Title VI "), and the Constitution and laws of the State of New York.

104.    Said defendants have implemented and are continuing to enforce, encourage and sanction a policy, practice and/or custom of unconstitutional excessive use of force, false arrests and malicious prosecution of county residents, including plaintiff, by their various police departments without justification, probable cause or due process required under the Fourth and Fourteenth Amendments.

105.    In addition, this pattern and practice of unconstitutional  excessive use of force, false arrests and malicious prosecution by defendants, they have often used, and continued to use, race and/or national origin, not probable cause as the determinative factors in deciding to abuse individuals in violation of the Equal Protection Clause of the Fourteenth Amendment.  The victims of such racial and national origin profiling are principally Black and Latino males.

106.    The defendants widespread constitutional abuses have flourished as a result of, and are directly and proximately caused by, policies, practices and/or customs devised, implemented and enforced by the County of Westchester, Village of Pleasantville, New York,  Town of Mount Pleasant, New York,  Commissioner-Sheriff George N. Longworth, Village of Pleasantville Former Police Chief Anthony Chiarlitti,

Town of Mount Pleasant Police Chief Police Louis Alagno.

107.   Defendants have acted with deliberate indifference to the constitutional rights of those who would come into contact with their police officers by:  (a) failing to properly screen, train, re-train and supervise their officers;  (b) failing to adopt and implement the recommendations regarding use of force training in the Final Report of the Panel, dated May 9, 2008;  (c) inadequately monitoring their officers and their arrest practices;  (d)  failing to sufficiently discipline their officers who engage in constitutional abuses;  and (e) ratifying and failing to rectify these unconstitutional practices.

108.   As a direct and proximate result of the defendants failures to screen, train, re-train and supervise its officers, numerous citizens have been subjected to unlawful use of force, false arrests, illegal searches and seizures, and malicious prosecutions, many times simply because of their race, including the plaintiff.

109.   The defendants' widespread abuses are also a direct and proximate result of their failures to properly and adequately monitor, discipline and take necessary corrective action against their officers who engage in, encourage or conceal unconstitutional practices. Among other things, these defendants knowingly, deliberately and recklessly have failed:

(a)      to take appropriate disciplinary action and necessary corrective measures against officers who have engaged in excessive use of force and/or unlawful arrests without probable cause;

(b)      to adequately monitor officers who have incurred a substantial number of civilian complaints, even in instances where the number of complaints should have triggered monitoring under established departmental guidelines;

(c)      to devise and implement appropriate oversight, disciplinary and remedial

measures in the face of extensive evidence of police brutality and false arrest being made without probable cause by officers;

(d)    to institute a formalized process for the review and analysis of all "Use of Force Reports" that are prepared by its personnel, specifically for the identification of tactical issues that need to be included into future training courses;

(e)    to convene an administrative panel to review firearm discharges and deadly physical force incidents;

(f)    to take sufficient corrective and remedial action against its officers who provide fabricated, false, or impermissible justifications for arrests; and

(g)    to take sufficient corrective, disciplinary and remedial action to combat the so-called "blue wall of silence," wherein its officers regularly conceal or fail to report police misconduct, *inter alia,* in sworn testimony, official reports, statements to the Special Investigations Unit, and in public statements.

110.    At all times material to this complaint, defendants had in effect *de facto* policies, practices and customs that were a direct and proximate cause of the unconstitutional conduct committed herein in that its police officers were permitted to engage in racial profiling in exercising their police powers in targeting its minority victims for police brutality and illegal arrest without probable cause and in failing to ensure that laws are enforced impartially by its members assigned to patrol duties.

111.    These policies, practices and customs include, *inter alia*:  *de facto* discrimination by officers who may be influenced by stereotypes resulting in race based false arrest and imprisonments; failure to enact and enforce a clear policy for the police providing that race, ethnicity, and national origin may not be considered at all by police members in exercising police discretion while investigating criminal acts; failure to

ensure that police officers exercise reasoned discretion during criminal investigations; in ratifying police brutality and misconduct and false arrests, and thereby sending a message to its police force that unlawful conduct may be committed with impunity.

112.    In addition, defendants, having conducted studies which identified trends of racial profiling, use of excessive force, and illegal arrests, yet took no or inadequate measures to address, remedy and/or minimize such patterns; failed to conduct proper analysis of police data to discern unlawful patterns about individual arrests, particularly about the race and ethnicity of citizens arrested and to use such information to institute corrective measures; failed to make broader assessment of the circumstances of false arrests; undertook no procedure for identifying lessons learned in the review process so that it may improve training and introduce more effective police practices; failed to hold those wrongdoers accountable; in the ongoing lack of transparency regarding police who engage in unlawful practices including false arrests particularly of African-American males and other minorities; failed to put in place adequate investigation and review processes; in the inadequate internal review process in instances where police commit brutality, and false arrests; in the failure to adequately scrutinize police arrest practices; in the failure to properly analyze statistics concerning of use of force and occurrences of false arrests which would suggest significant racial disparities in persons brutalized and falsely arrested; in the failure to aggregate and analyze statistical data related to brutality and false arrest incidents which should include a wide range of facts including the race of persons falsely arrested; in the failure to assess false arrests from a procedural and training perspective and impose discipline; in targeting African-American males as victims of police brutality and false arrests.

113.    As a result of the foregoing, plaintiff was caused to suffer serious personal injuries, pain and suffering, trauma, and other bodily injuries, fear of impending death, post traumatic stress disorder, shock, loss of enjoyment of life, violation of his civil, constitutional and human rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom and damage to his reputation and standing within his community.

### FIFTH CAUSE OF ACTION
(42 U.S.C. § 1983 - Violations of the Equal Protection Clause)

114.    Plaintiff repeats, reiterates and realleges each and every allegation contained in   preceding paragraphs as if set forth at length herein.

115.    Acting under color of state law, defendants have applied their arrest practices, including unlawful use of excessive force, lack of probable cause and the use of false arrest to cover up for their misconduct in an intentionally discriminatory and race-based manner.  Defendants have focused use of illegal arrest practices without warrant or probable cause in minority communities and on persons such as plaintiff who objected to the unlawful use of force against his friends who were African American students.

116.    Defendants have acquiesced in, ratified and failed to check widespread violations of the constitutional rights of citizens, including plaintiff to be free from excessive force and unreasonable search and seizure because of race.

117.    These constitutional abuses were and are directly and proximately caused by policies, practices and/or customs devised, implemented, enforced, encouraged, and sanctioned by the defendants, including: (a) targeted implementation of warrantless

arrests without probable cause in communities of color; and (b) the discriminatory failure to adequately and properly screen, train, re-train, monitor, discipline and supervise its officers.

118.   As a direct and proximate result of defendants' practices, plaintiff was deprived of his right to Equal Protection of the laws under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

**SIXTH CAUSE OF ACTION**
(Claims Under Title VI of the
Civil Rights Act of 1964, 42 U.S.C. §2000(d), *et seq.*
Against the Municipal Defendants)

119.   Plaintiff repeats, reiterates and realleges each and every allegation contained in   preceding paragraphs as if set forth at length herein.

120.   The law enforcement activities described in this complaint have been funded, in part, with federal funds.

121.   Discrimination based on race in the law enforcement activities and conduct described herein are prohibited under 42 U.S.C. § 2000(d), *et seq.* The acts and conduct complained of herein by the defendants were motivated by racial animus, and were intended to discriminate on the basis of race and/or had a disparate impact on minorities, particularly Blacks and Latinos.

122.   As a direct and proximate result of the above mentioned acts, the plaintiff has suffered injuries and damages and has been deprived of his rights under the civil rights laws.

30

**SEVENTH CAUSE OF ACTION**
(Negligent Hiring, Training, Discipline, Supervision and Monitoring and Retention of
Employment Services (Against defendants County of Westchester, Village of
Pleasantville, New York, Town of Mount Pleasant, New York, Commissioner-Sheriff
George N. Longworth, Village of Pleasantville Former Police Chief Anthony Chiarlitti,
Town of Mt. Pleasant Police Chief Police Louis Alagno)

123.    Plaintiff repeats and realleges the foregoing paragraphs as if the same
were fully set forth at length herein.

124.    Defendant, County of Westchester, through its Department of Public
Safety, owed a duty of care to plaintiff to prevent the physical and mental abuse
sustained by plaintiff under the same or similar circumstances, a reasonable, prudent,
and careful person would have anticipated that an injury to plaintiff or to those in a like
situation would probably result from this conduct.

125.    Defendant Village of Pleasantville, New York, through its police
department, owed a duty of care to plaintiff to prevent the physical and mental abuse
sustained by plaintiff. Under the same or similar circumstances, a reasonable, prudent,
and careful person would have anticipated that an injury to plaintiff or to those in a like
situation would probably result from this conduct.

126.    Defendant Town of Mount Pleasant, New York, through its police
department, owed a duty of care to plaintiff to prevent the physical and mental abuse
sustained by plaintiff. Under the same or similar circumstances, a reasonable, prudent,
and careful person would have anticipated that an injury to plaintiff or to those in a like
situation would probably result from this conduct.

127.    Upon information and belief, the defendant officers were unfit and
incompetent for their positions as police officers.

128.    Upon information and belief, defendants County of Westchester, Village of

Pleasantville, New York,  Town of Mount Pleasant, New York,  Commissioner-Sheriff George N. Longworth, Village of Pleasantville Former Police Chief Anthony Chiarlitti, Town of Mount Pleasant Police Chief Police Louis Alagno, knew or should have known through the exercise of reasonable diligence that the defendant officers were dangerous.

129.   Upon information and belief, the defendants County of Westchester, Village of Pleasantville, New York,  Town of Mount Pleasant, New York,  Commissioner-Sheriff George N. Longworth, Village of Pleasantville Former Police Chief Anthony Chiarlitti, Town of Mount Pleasant Police Chief Police Louis Alagno, negligence in hiring, training, re-training, supervising, monitoring, disciplining, and retaining the  defendant officers proximately caused plaintiff's significant physical and mental injuries.

130.   Upon information and belief, because of defendants County of Westchester, Village of Pleasantville, New York,  Town of Mount Pleasant, New York, Commissioner-Sheriff George N. Longworth, Village of Pleasantville former Police Chief Anthony Chiarlitti, Town of Mount Pleasant Police Chief Police Louis Alagno, negligent hiring, training, re-training, discipline, supervision, monitoring and retention of the aforementioned defendant officers, plaintiff incurred significant physical and mental, injuries.

131.   As a direct and proximate result of the above mentioned acts, the plaintiff has suffered injuries and damages hereinbefore alleged.

### EIGHTH CAUSE OF ACTION
(42 U.S.C. Section 1983 - Failure to Intercede)

132.   Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

133.   By their conduct and under color of law defendant police officers, and John

Doe officers each had opportunities to intercede on behalf of plaintiff to prevent the excessive force and unreasonable seizure but, due to their intentional conduct or deliberate indifference, declined or refused to do so.  Moreover, defendants' actions also contributed to the deprivation of plaintiff's rights suffered on October 17, 2010 and the other incidents as previously alleged herein, at the hands of defendants and of defendants "John Does" police officers whose identities are unknown.

134.    By reason of the above, plaintiff has suffered great personal injuries, ongoing physical injuries and mental anguish and has been caused to have incurred medical and other expenses, loss of earnings and earnings ability, past and future, and has otherwise been damaged.

## NINTH CAUSE OF ACTION
(42 U.S.C. Section 1983 - Conspiracy)

135.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

136.    On October 17, 2010 and thereafter defendants, under color of law, conspired with one another to deprive plaintiff of his constitutional rights, including the rights to be free from the intentional use of unreasonable force, to be free from unreasonable search and seizure, to associate and speak freely, to have access to seek redress in the courts and to be free from false arrest, false imprisonment, the delay and denial of medical attention and malicious prosecution

137.    As part of the conspiracy, defendants physically assaulted plaintiff at the scene.

138.    In furtherance of the conspiracy and in order to cover up the acts of brutality, defendants engaged in the following:

33

(A)    Falsely arresting and imprisoning plaintiff;

(B)    Fabricating and contriving criminal charges lodged against plaintiff;

(C)    Although they were aware of the brutality and were required to report it immediately, they deliberately suppressed the truth;

(D)    Submitted false police reports, statements and testimony to support and corroborate the fabricated charges lodged against plaintiff to insulate the arresting police officers from administrative and criminal proceedings and sanctions;

(E)    Failed to submit true and accurate police documents and reports and failed to cooperate with law enforcement officials investigating plaintiff's claims.

139.    By reason of the foregoing, the plaintiff has suffered personal injury, unlawful confinement, ongoing physical injuries and mental anguish and has been caused to have incurred medical and other expenses, loss of earnings and earnings ability, past and future, and has otherwise been damaged in an amount to be determined at trial.

### TENTH CAUSE OF ACTION
(42 U.S.C. Section 1985(3) - Conspiracy to Hinder Equal Protection)

140.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

141.    On or about October 17, 2010 and thereafter, the individual defendants conspired with each other and with others for the purpose of hindering and preventing the authorities of the State of New York from securing and providing plaintiff equal protection of the laws.

142.    Among the actions taken in furtherance were false statements made to

internal affairs investigations and the abdication of the officers' legal duty to report incriminating evidence to proper authorities. Moreover, defendants actions also contributed to the deprivation of plaintiff's rights suffered on October 17, 2010 and the other incidents as previously alleged, at the hands of defendants and defendants "John Does" police officers whose identities are unknown.

143.    By reason of the foregoing, the plaintiff has suffered confinement, personal injury, ongoing physical injuries and mental anguish and has been caused to have incurred medical and other expenses, past and future, loss of earnings and earnings ability, past and future, and has otherwise been damaged.

## ELEVENTH CAUSE OF ACTION
(42 U.S.C. Section 1985(3) - Conspiracy to Impede Due Course of Justice)

144.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

145.    The defendants conspired to impede the due course of justice in New York State, with the intent of denying plaintiff the equal protection of the laws.

146.    By reason of the foregoing, the plaintiff has suffered confinement, personal injury, ongoing physical injuries and mental anguish and has been caused to have incurred medical and other expenses past and future, loss of earnings and earnings ability past and future, and has otherwise been damaged.

## TWELFTH CAUSE OF ACTION
(42 U.S.C. Section 1986 - Action for Neglect to Prevent)

147.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

148.    Upon information and belief, the defendants had knowledge that a 42 U.S.C. §1985(3) conspiracy was in progress, had the power to prevent or aid in

preventing the conspiracy from continuing, neglected or refused to do so.

149.    Defendants could have, with reasonable diligence, promptly reported the brutality to superiors and to duly authorized investigators. Their failure contributed to plaintiff's suffering a continued criminal prosecution, initially for a felony charge, thereby exacerbating his pain and suffering.

150.    Had the defendants complied with the law and furnished truthful information to the authorities investigating the brutality, the plaintiff sustained on October 17, 2010, and the further and other violations plaintiff sustained thereafter, the § 1985 (3) conspiracy and § 1983 violations would not have succeeded to the extent that it did and continues.

151.    By reason of the foregoing plaintiff has suffered confinement, personal injury, ongoing physical injuries and mental anguish and has been caused to have incurred medical and other expenses, loss of earnings and earnings ability, past and future, and has otherwise been damaged.

## THIRTEENTH CAUSE OF ACTION
### Negligent Denial of Medical Care
#### (Against All Defendants)

152.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

153.    Defendants owed a duty of care to plaintiff.

154.    The defendant officers breached that duty of care by unreasonably denying plaintiff immediate medical care for his injuries.

155.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

156.    All of the foregoing occurred without any fault or provocation by plaintiff.

157.    Defendants, the County of Westchester, Village of Pleasantville, New York, Town of Mount Pleasant, New York, as the employers of the defendant officers, are responsible for their wrongdoing under the doctrine of respondent superior.

## FOURTEENTH CAUSE OF ACTION
### Intentional/Reckless Infliction of Emotional Distress
### (Against All Defendants)

158.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

159.    Defendants Hess and Beckley intentionally shot at and into DJ Henry's vehicle without cause, killing plaintiff's close friend while plaintiff witnessed DJ Henry lying on the ground bleeding.  This conduct was extreme and outrageous.

160.    Defendants officers misconduct in falsely arresting and handcuffing plaintiff's close friend Desmond Hinds and leaving him laying in the street, caused plaintiff to be in fear for the life of his friend and for his own life.  This conduct was extreme and outrageous.

161.    Defendants officers misconduct in threatening plaintiff with deadly physical force by waving a gun directly at him, violently tackling him to the ground and seriously injuring him,  was extreme and outrageous.

162.     As a result of defendants actions plaintiff suffered extreme and severe emotional distress.

163.    Defendants knew that such distress was substantially certain to result from their conduct or, at a minimum, were done in disregard of a substantial probability of causing severe emotional distress.

164.    Defendants County of Westchester is responsible for the wrongdoing of its agents, servants and/or employees, under the doctrine of respondent superior.

165.   Defendant Village of Pleasantville, New York, is responsible for the wrongdoing of its agents, servants and/or employees, under the doctrine of respondent superior.

166.   Defendant Town of Mount Pleasant, New York, is responsible for the wrongdoing of its agents, servants and/or employees, under the doctrine of respondent superior.

167.   As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

### FIFTEENTH CAUSE OF ACTION
(For Malicious Prosecution)

168.   Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

169.   Defendants, their agents, servants and/or employees, maliciously prosecuted plaintiff without just right or grounds therefore.

170.   That the plaintiff was wholly innocent of said charges and was forced by defendant to submit to Court proceedings.

171.   Plaintiff was arraigned on the initial misdemeanor information; thereafter re-arraigned on a superceding misdemeanor information on December 16, 2010, and subjected to criminal prosecution.

172.   Defendants, their agents, servants and/or employees commenced the criminal proceeding against plaintiff because of a wrong or improper motive other than a desire to see the ends of justice served.

173.   Thereafter and on March 24, 2011 all criminal charges wrongfully lodged against plaintiff were dismissed in full by the Hon. Robert J. Ponzini declaring:

"These gentleman who came in here presumed innocent will leave here innocent.  And that is what I been elected to do and that is my jurisdiction, and that's what I'm going to do today."

174.    That the defendants, their agents, servants and/or employees commenced a criminal proceeding against the plaintiff; that there was a termination of the proceeding in favor of the plaintiff; that there was an absence of probable cause for the criminal proceeding and that there was actual malice by the defendants, its agents, servants and/or employees, against the plaintiff.

175.     That by reason of the said false arrest, detention and malicious prosecution plaintiff was caused to suffer great pain in both mind and body; subjected to great indignities, humiliation and ridicule; plaintiff was charged and prosecuted before the public for crimes which he did not commit; and greatly injured in his credit and circumstances; suffered a loss of education and educational opportunities; expenses for legal and other professional services.

**SIXTEENTH CAUSE OF ACTION**
(Prima Facie Tort)

176.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

177.    In falsely arresting, detaining, imprisoning, fabricating and conspiring against Plaintiff, Defendants acted with malicious intent, recklessness and negligence to injure and harm Plaintiff.

178.    By reason of the tortuous conduct of Defendants, Plaintiffs has been damaged as set forth above.

179.    For all claims under New York State Law, Defendants are jointly and

severally liable to the Plaintiff inasmuch as this action arises out of the exceptions set

forth in 1602 subdivisions 5, 7 and 11 of the Civil Practice Law and Rules.

## SEVENTEENTH CAUSE OF ACTION
### (New York Constitution Art. I, § 11)

180.    Plaintiff repeats and realleges the foregoing paragraphs as if the same

were fully set forth at length herein.

181.    By the aforesaid acts, Defendants have violated Plaintiff's right to the equal

protection laws under Article I, 11 of the New York State Constitution, thereby giving rise

to cause of action pursuant to that Article.

182.    The conduct and actions of the named defendant police officers , and

municipality defendants, acting under color of law, in falsely arresting, detaining,

imprisoning, assaulting, maliciously prosecuting and conspiring against plaintiff, was

done intentionally, maliciously and/or with a reckless disregard for the natural probable

consequences of their acts, was done without lawful justification, and was designed to

and did cause specific and serious bodily, mental and emotional harm, pain and

suffering in violation of the plaintiffs' Constitutional rights as guaranteed under law and

Constitution of the State of New York. The above described actions and omissions

engaged in under color of state law by the collective defendants including the

municipality defendants, within the meaning of Article I,§11 ,deprived the plaintiff of

rights, including but not limited to, their rights under Article I, §§8, 9 guaranteeing

freedom of expression and association, Article I,§12 guaranteeing protection against

unlawful seizure of his person, Article I, §11 guaranteeing due process and equal

protection under the law, and Article I, §15 guaranteeing protection from cruel and

unusual punishment.

183.    By reason of the Constitutional violations by defendants, plaintiff have been damaged as set forth above.

**WHEREFORE**, plaintiff respectfully requests judgment against defendants as follows:

(A)    an order declaring that defendants' conduct violated plaintiff's rights as guaranteed by the First, Fourth and Fourteenth Amendments to the United States Constitution;

(B)    an order granting compensatory damages in an amount to be determined at trial;

(C)    an order awarding punitive damages against defendants Commissioner-Sheriff George N. Longworth, Village of Pleasantville Former Police Chief Anthony Chiarlitti, Town of Mount Pleasant Police Chief Police Louis Alagno,  Hess, Beckley, Gagnon, Bosan and Lowenstein, and the unknown defendant police officers who assaulted and battered plaintiff in an amount to be determined at trial;

(D)    an order directing defendants County of Westchester, Village of Pleasantville, New York,  Town of Mount Pleasant, New York, Commissioner-Sheriff George N. Longworth, Town of Mount Pleasant Police Chief Louis Alagno, to adopt and implement the "Recommendations Regarding Guidelines, Policies and Available Resources in Use of Force Training", "Recommendations Regarding Recruit Training in Use of Force" and "Recommendations Regarding In-Service Training Use of Force" contained in the Final Report of the Panel to Review Use of Force Training at the Westchester County Police Academy issued May 9, 2008;

(E)     an order appointing a Special Master to oversee, monitor and insure the

implementations contained in the Final Report of the Panel;

(F)     an order awarding plaintiff reasonable attorneys' fees and costs under

42 U.S.C. § 1988; and

(G)     an order awarding such other and further relief as the Court may deem just

and proper, together with attorneys' fees, interest, costs and disbursements of this

action.

Dated: Lake Success, New York
     May 4, 2012

                          Law Offices of Bonita E. Zelman

                          By: _____/S_____
                              Bonita E. Zelman, Esq. (BEZ 4890)
                          Attorney for plaintiff Joseph Romanick
                          2001 Marcus Ave., Suite S-150
                          Lake Success, N.Y. 11042
                          516-616-0707

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Joseph Romanick,<br><br>                              Plaintiff,<br><br>                    -Against-<br><br>County of Westchester, Village of Pleasantville, New York, Town of Mt. Pleasant, New York, Commissioner-Sheriff George N. Longworth, Village of Pleasantville Former Police Chief Anthony Chiarlitti, Town of Mount Pleasant Police Chief Louis Alagno, Police Officer Aaron Hess, Police Officer Ronald Beckley, Police Officer Ronald Gagnon, Detective Marco A. Mendoza, Detective Matthew F. Brown, Detective Martin Greenberg, Police Officer George W. Winsman, and John Does #1-30,<br><br>                              Defendants. | 11 CV 7267 (KMK) |

AMENDED COMPLAINT

Law Offices of Bonita E. Zelman

By: _____/S_____
        Bonita E. Zelman, Esq. (BEZ 4890)
        Attorney for plaintiff Joseph Romanick
        2001 Marcus Ave., Suite S-150
        Lake Success, N.Y. 11042
        516-616-0707